IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

PROPHET PAULCIN,

     Petitioner,

v.                                                            CASE NO. 3:15-cv-76-MCR-GRJ

SECRETARY, DEP'T
OF CORRECTIONS,

     Respondent.

_____/

## <u>REPORT AND RECOMMENDATION</u>

This case is before the Court on ECF No. 1, Petitioner's *pro se*

Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The

Petition stems from Petitioner's Santa Rosa County jury conviction for

possession of contraband (a razorblade weapon), and aggravated battery

upon a detainee, for which Petitioner was sentenced to fifteen years'

imprisonment. Petiitoner asserts four grounds of ineffective assistance of

trial counsel. (ECF No. 1.) Respondent filed a response and appendix with

relevant portions of the state-court record, arguing that the Petition should

be denied because his claims are without merit. (ECF No. 16.) Petitioner

has not filed a reply and the time for doing so has expired.[1] The Petition is

therefore ripe for review. Upon due consideration of the Petition, the

response, and the state-court record, the undersigned recommends that

the Petition be denied.[2]

## I.  <u>State-Court Proceedings</u>

### *Pre-Trial, Trial, and Sentencing*

On October 8, 2003, while incarcerated at Santa Rosa Correctional

Institution ("Santa Rosa CI"), Petitioner was charged with possession of

contraband (a "razorblade weapon") in violation of Fla. Stat. §§

944.47(1)(c), and (2). (ECF No. 16-1 at 22.) Petitioner was thereafter

arrested at Santa Rosa CI on October 27, 2003. (*Id.* at 32.)

Through counsel, Tony L. Henderson, Petitioner filed a notice of

discovery on December 9, 2003. (*Id.* at 39.) The state thereafter filed its

initial discovery exhibit on December 11, 2003. (*Id.* at 41–43.)

On March 21, 2004, Petitioner filed his first *pro se* motion to

discharge Mr. Henderson and a *pro se* motion for *Faretta* hearing. (*Id.* at

---

[1] The Court granted Respondent's fifth motion for extension of time to respond to the Petition on November 5, 2015. (ECF No. 15.) In that order the Court ordered Petitioner to file his reply, if any, on or before January 5, 2016. (*Id.*) As of the date of this report and recommendation, however, Petitioner has not filed a reply.

[2] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

46–47.) A hearing was scheduled for April 8, 2004. (*Id.* at 49.)

Petitioner filed his second *pro se* motion to discharge Mr. Henderson and a *pro se* motion for *Faretta* hearing on May 4, 2004. (*Id.* at 51–52.) A hearing was scheduled for June 9, 2004. (*Id.* at 54.)

The State then filed an amended information on August 6, 2004, charging Petitioner with: (1) possession of contraband, to wit: a razorblade weapon; and (2) aggravated battery upon a detainee, Carlton Hart. (*Id.* at 56.)

On December 6, 2004, Petitioner filed his third *pro se* motion to discharge Mr. Henderson and a *pro se* motion for *Faretta* hearing. (*Id.* at 64–65.) A hearing was held on December 16, 2004. (*Id.* at 67.) Petitioner admitted that he wanted Mr. Henderson to remain in an advisory capacity because he did not intend to proceed to trial *pro se*, but that Petitioner wanted to "do some of the depositions and other pretrial investigations." (*Id.* at 71–72.) The trial court denied Petitioner's request to discharge Mr. Henderson (*Id.* at 72–74.) Mr. Henderson represented that he wanted a continuance because Petitioner had just provided a list of potential witnesses whom he would like to have interviewed. (*Id.* at 75-79.) The trial court granted Mr. Henderson's motion for a continuance. (*Id.* at 78–79.)

On February 9, 2005, Petitioner filed a *pro se* "motion to secure

presence and to actively participate in all depositions of witnesses." (*Id.* at 85–87.) The court struck Petitioner's filing, however, because Petitioner filed the motion *pro se* while he was represented by court-appointed counsel. (*Id.* at 89.)

Mr. Henderson then filed another motion for continuance on June 14, 2005, because additional time was necessary to complete discovery. (*Id.* at 91.)

Jury selection commenced and concluded on December 12, 2005. (*Id.* at 98–111.) That same day, Mr. Henderson filed reciprocal discovery as well as amended reciprocal discovery the next day. (*Id.* at 114–15.)

On December 16, 2005, Petitioner filed his fourth *pro se* motion to discharge Mr. Henderson and a *pro se* motion for *Faretta* hearing. (*Id.* at 117–19.) Both motions were heard that same day, prior to the commencement of trial. (*Id.* at 125–69.) The bases for Petitioner's motions were that: (1) Petitioner gave Mr. Henderson a list of witnesses, but Mr. Henderson failed to investigate five of the witnesses, (2) Petitioner thought the case should have gone in a different direction with a different defense theory, (3) Petitioner was not happy with the lack of communication between him and Mr. Henderson, and (4) Petitioner wanted to present

different evidence at trial than the evidence Mr. Henderson thought should be used. (*Id.* at 125–36.) Petitioner asserted that he wanted to represent himself at trial and that it was in his best interest to proceed *pro se*. (*Id.*) Mr. Henderson explained that he discussed with Petitioner (who had provided affidavits from the witnesses Petitioner said Mr. Henderson failed to investigate) and explained to Petitioner that what those witnesses would testify to was not relevant. (*Id.* at 138.) Mr. Henderson did, however, investigate and subpoena two witnesses for trial who, based on their affidavits, could present relevant testimony. (*Id.* at 138–39.) Mr. Henderson stated he was totally satisfied that he prepared the case "not only to a hundred percent but a hundred and ten percent and ready to go." (*Id.* at 139.) Additionally, Mr. Henderson said that he told Petitioner he thought self-defense was Petitioner's best theory of defense based on the evidence, but that he gave Petitioner the choice as to which theory to pursue and Petitioner ultimately chose. (*Id.* at 139–40.) Mr. Henderson also disagreed with Petitioner's assertion that there was a lack of communication, as evidenced by Mr. Henderson's investigation into the possible witnesses. (*Id.* at 140–41.) Moreover, Mr. Henderson said he talked to Petitioner the night before and Petitioner did not mention any of these complaints. (*Id.* at 141.)

After hearing this evidence the trial court concluded:

> Mr. Henderson has, in fact, adequately and effectively represented you. He investigated the case. It sounds like he's gone above and beyond what is normally done in a lot of these cases. He's communicated with you. He's discussed your theories of defense. He has in fact continued the case one time I believe on the issue of the DNA. I remember that from the last hearing, and in my opinion he has very effectively represented you so I am not going to remove him from the case, sir. Now, if you want to discharge him – if you want to discharge him – you need to be aware that then you will be subject to a Faretta hearing, but if you discharge Mr. Henderson I can tell you now, I am not going to appoint another counsel to represent you.

(*Id.* at 144–45.) In response Petitioner stated, "Yes, I would like to discharge him. I don't want another counsel." (*Id.* at 146.)

After a brief recess Petitioner re-asserted that he wanted to represent himself. (*Id.* at 146.) After a lengthy *Faretta* colloquy, the trial court granted Petitioner's request to proceed *pro se* at trial. (*Id.* at 147–69.) The trial court, however, granted Petitioner request (upon suggestion by the trial court) that Mr. Henderson serve as "stand-by" counsel. (*Id.*)

At the conclusion of the trial, the jury found Petitioner guilty as charged on both counts of the amended information. (ECF No. 16-2 at 120–21.) The trial court thereafter inquired of Petitioner whether he wanted to be represented by counsel at the sentencing proceeding. Petitioner advised the court that he did want to be represented by an attorney. (*Id.* at

123.)  Accordingly, the trial court reappointed counsel. (*Id.*)

On December 21, 2005, Petitioner filed four separate *pro se* motions entitled "Motion for New Trial." (*Id.* at 125–57.) Petitioner also filed his fifth *pro se* motion to discharge court-appointed counsel and a *pro se* motion for *Faretta* hearing. (*Id.* at 158–59.) The trial court scheduled a hearing for January 19, 2006 on Petitioner's motion to discharge counsel and motion for *Faretta* hearing. (*Id.* at 161.) Petitioner, however, was not transported to court for the hearing because he had attempted suicide the night before. (*Id.* at 164.) The trial court *sua sponte* appointed an expert, James Larson, Ph.D., to evaluate Petitioner's competency to proceed to sentencing. (*Id.* at 171–74.) Sentencing was thereafter scheduled for March 16, 2006. (*Id.* at 176.)

On February 1, 2006, Petitioner filed two *pro se* motions both entitled "Supplement Motion for New Trial." (*Id.* at 178–92.) Then on February 11, 2006, Petitioner filed his sixth *pro se* motion to discharge court-appointed counsel and a *pro se* motion for *Faretta* hearing. (*Id.* at 194–98.)

At the hearing on March 16, 2006, the court learned that Petitioner had not yet been evaluated by Dr. Larson. The Court postponed sentencing and filed an amended order to appoint an expert, this time appointing John Bingham, Ed.D. (*Id.* at 208.) The evaluation disclosed that

there were no problems with Petitioner's competency. (*Id.* at 215.) Sentencing was therefore continued to June 22, 2006. (*Id.* at 217.)

On June 13, 2006, Petitioner filed eleven separate *pro se* motions seeking various forms of relief. (*Id.* at 221–314.) At proceedings on June 22, 2006, Mr. Henderson moved to withdraw as counsel. (*Id.* at 317.) The trial court granted Mr. Henderson's request and thereafter permitted Petitioner to proceed *pro se* on his various motions. (*Id.*) At the hearing, the court denied all of the pending *pro se* motions except the motion to compel the public defender to provide a copy of his file to the extent the documents were not work product, and the motion for preservation of evidence by the clerk, state attorney's office, and the FDOC to the extent the documents were not work product. (*Id.* at 317, 352–54.) Steven Warrick was appointed to represent Petitioner for sentencing purposes on August 1, 2006. (*Id.* at 317–19.) The trial court informed Petitioner that it would entertain no further *pro se* motions. (*Id.* at 317.)

On June 27, 2006, Petitioner filed his seventh *pro se* motion to discharge court-appointed counsel and a *pro se* motion for *Faretta* hearing. (*Id.* at 341–43.) After addressing these two motions at proceedings on August 1, 2006, the trial court granted Petitioner's request to discharge Mr. Warrick and represent himself at sentencing. (ECF No. 16-3 at 90–118.)

The trial court then sentenced Petitioner as a habitual violent felony offender to fifteen years' imprisonment on count one, possession of contraband, and fifteen years' imprisonment on count two, aggravated battery on a prison detainee, to run concurrent with each other but consecutive to any other state prison sentence Petitioner was serving at the time. (*Id.* at 115–16, 140–47.) At the conclusion of sentencing on August 1, 2006, Petitioner moved to withdraw as counsel and requested the court to appoint an attorney to represent him on appeal. (*Id.* at 117.)

### *Post-Sentencing*

On August 5, 2008, Petitioner filed a *pro se* motion for belated direct appeal to the First District Court of Appeal ("First DCA"). (*Id.* at 149–61.) The First DCA granted the motion and Petitioner, through counsel, Danielle Jorden, filed his initial brief on January 11, 2013. (*Id.* at 163–95.) Petitioner presented two arguments on appeal: (1) the trial court erred by failing to conduct a *Faretta* inquiry when Petitioner unequivocally demanded self-representation on December 16, 2004; and (2) the trial court abused its discretion by denying Petitioner's motion for continuance on the morning of trial after being granted permission to proceed *pro se* at trial. (*Id.*) The First DCA per curiam affirmed without written opinion on May 7, 2013, and the mandate followed on June 4, 2013. (*Id.* at 228–29.)

Petitioner then filed a *pro se* motion for postconviction relief pursuant to Rule 3.850 on June 30, 2013. (*Id.* at 231–60.) The court struck the motion without prejudice, however, on September 13, 2013, as facially or legally insufficient. (*Id.* at 262–63.)

Petitioner then filed a first amended motion for postconviction relief on October 27, 2013. (*Id.* at 265–92; ECF No. 16-4 at 1–8.) He then filed a motion for leave to amend and a second amended motion for postconviction relief on November 9, 2013. (ECF No. 16-4 at 10–40.) The court granted his motion for leave to amend on December 4, 2013, but then struck the second amended motion for postconviction relief without prejudice on December 30, 2013, for failing to comply with content requirements of Rule 3.850(c) or the certification requirements of Rule 3.850(n)(2), and as containing claims that were facially and/or legally insufficient. (*Id.* at 42–46.)

Petitioner then filed his third amended motion for postconviction relief on March 10, 2014. (*Id.* at 48–89.) The court dismissed Petitioner's third amended motion for postconviction relief without prejudice on April 3, 2014, because the motion and memorandum did not comply with the content requirements of Rule 3.850(c) or the certification requirements of Rule 3.850(n)(2), and did not contain claims that were facially and/or

legally sufficient. (*Id.* at 91–92.)

Accordingly, Petitioner filed his fourth amended motion for postconviction relief on April 14, 2014. (*Id.* at 94–132.) He then filed a fifth amended motion for postconviction relief on April 21, 2014. (*Id.* at 134–61.) On May 2, 2014, the state court summarily denied all four grounds of Petitioner's fifth amended motion for postconviction relief. (*Id.* at 163–66.) Petitioner filed a notice of appeal to the First DCA on May 29, 2014, and thereafter filed his initial brief on July 15, 2014. (ECF No. 16-5 at 10–24.) On October 6, 2014, the First DCA per curiam affirmed without written opinion and the mandate followed on November 3, 2014. (*Id.* at 35–36.)

Lastly, on February 11, 2015, Petitioner filed a petition for writ of habeas corpus in the First DCA pursuant to Fla. R. App. P. 9.141. (*Id.* at 38–42.) He then filed the instant petition in this Court on February 25, 2015. (ECF No. 1.)[3]

## II. <u>Scope of Federal Habeas Review</u>

The role of a federal habeas court when reviewing a state prisoner's application pursuant to 28 U.S.C. § 2254 is limited. *Williams v. Taylor*, 529

---

[3] After Petitioner filed the instant petition, the First DCA *per curiam* denied his pending state petition for writ of habeas corpus on the merits on March 12, 2015. (ECF No. 16-5 at 45.) Petitioner also continued filing motions for post conviction relief alleging newly discovered evidence in the state court following the filing of the instant petition. (*Id.* at 47–58, 63–74, 79–91.)

U.S. 362, 403–04 (2000). Under section 2254(a), federal courts "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

Additionally, federal courts must give deference to state court adjudications unless the state court's adjudication of the claim is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined  by  the  Supreme  Court  of  the  United  States." *See* § 2254(d)(1). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Carrizales v. Wainwright*, 699 F.2d 1053, 1054–55 (11th Cir. 1983).

Moreover, a habeas petition grounded on issues of state law provides no basis for habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. *Engle v. Isaac*, 456 U.S. 107, 120–21 (1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989). A federal writ of habeas corpus is only available in cases of federal constitutional error. *See Jones v. Goodwin,* 982 F.2d 464, 471 (11th Cir. 1993); *Krasnow v. Navarro,* 909 F.2d 451, 452 (11th Cir.

1990). The limitation on federal habeas review applies with equal force when a petition, which truly involves only state law issues, is "couched" in terms of alleged constitutional violations. *Branan*, 861 F.2d at 1508.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not

attempt to divine the lawyer's mental processes underlying the strategy."

*Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en

banc). "No lawyer can be expected to have considered all of the ways [to

provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some
> other reasonable courses of defense (that the lawyer did not
> think of at all) existed and that the lawyer's pursuit of course A
> was not a deliberate choice between course A, course B, and
> so on.  The lawyer's strategy was course A.  And [the Court's]
> inquiry is limited to whether this strategy, that is, course A,
> might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that

counsel's unreasonable conduct might have had "some conceivable effect

on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a

defendant must show a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been

different." *Id*. at 694. A "reasonable probability is defined as a probability

sufficient to undermine confidence in the outcome." *Id*.

When the state courts have denied an ineffective assistance of

counsel claim on the merits, the standard a petitioner must meet to obtain

federal habeas relief is a difficult one. *Harrington v. Richter*, 562 U.S. 86,

102 (2011). The standard is not whether an error was committed, but

whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. § 2254(d)(1). As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Richter*, 562 U.S. at 100 (quotation marks omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 105. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

## III.  Discussion

Petitioner presents four grounds for relief: (1) ineffective assistance of trial counsel for failing to depose state witness Officer O'Rouke; (2) ineffective assistance of trial counsel for failing to timely provide the prosecution with a notice of intent to admit evidence of the victim's prior bad acts; (3) ineffective assistance of trial counsel for failing to investigate witnesses; and (4) ineffective assistance of trial counsel for failing to investigate and introduce exculpatory forensic evidence. (ECF No. 1.) Petitioner presented all four grounds to the state circuit court, which denied the claims on the merits:

Defendant was not represented [by] Mr. Henderson at trial.

> Instead, as he requested, Defendant represented himself at trial. Mr. Henderson was present merely as standby counsel. As such, the Court finds that Defendant's claims of ineffective assistance of counsel should be denied. *See Behr v. Bell*, 665 So. 2d 1055, 1056–57 (Fla. 1996) ("A defendant who represents himself has the entire responsibility for his own defense, even if he has standby counsel. Such a defendant cannot thereafter complain that the quality of his defense was a denial of 'effective assistance of counsel.'"); *see also Barnes v. State*, 124 So. 3d 904, 917–18 (Fla. 2013); *McKenzie v. Crews*, 2014 WL 1491501, *9 (Fla. Apr. 17, 2014); *cf. LaFavors v. State*, 921 So. 2d 856 (Fla. 4th DCA 2006).

(ECF No. 16-4 at 163–66.) The First DCA subsequently per curiam affirmed without written opinion. (*Id.* at 35–36.)

As an initial matter, Petitioner argues in his memorandum that the state court "refused to entertain Petitioner's motion on its merits." (ECF No. 1 at 25.) The Court disagrees.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. The state circuit court clearly stated that it "finds that Defendant's claims of ineffective assistance of counsel should be denied," (ECF No. 16-4 at 165), and the First DCA per curiam affirmed this decision. This constitutes an adjudication on the merits.

To the extent the state circuit court failed to reference *Strickland* or make any explicit findings pertaining to deficient performance or prejudice, this does not mean the ultimate decision was not on the merits. It appears, based on the circuit court's citations to *Behr*, *Barnes*, *McKenzie*, and *LaFavors*, that the circuit court construed these claims as essentially equating to errors at trial. As these cases suggest—and as common sense dictates—Petitioner cannot demonstrate that he was denied effective assistance of counsel at trial because Mr. Henderson did not represent Petitioner at trial. *See Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) (noting that "[t]he right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law. Thus, whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'"); *Behr*, 665 So. 2d at 1056–57 (concluding that a trial court may appoint a public defender to serve as standby counsel for an indigent, self-representing defendant, and noting that a defendant who represents himself has the entire responsibility for his own defense and cannot thereafter complain that the quality of his defense was a denial of "effective assistance of counsel"); *Barnes*, 124 So. 3d at

917–18 (standby counsel had no obligation to either request a competency determination for defendant or suggest that the trial court order one because the pro se defendant was responsible for his own representation); *cf LaFavors*, 921 So. 2d at 858 (reversing and remanding trial court's summary denial of claims of ineffective assistance of counsel prior to discharge where record did not refute defendant's claims that he was actually represented by counsel with respect to the specific acts or omissions in connection with which he alleged counsel was ineffective); *see also McKenzie*, 153 So. 3d at 879 (defendant's claim that he was denied the opportunity to compel witnesses on his behalf failed because defendant chose to represent himself and never sought to invoke any process whatsoever).

To the extent, however, Petitioner's claims of ineffective assistance of counsel claim are based on Mr. Henderson's performance leading up to trial before Mr. Henderson was discharged and appointed as standby counsel, these claims would be analyzed under *Strickland*. *See United States v. Roggio*, 863 F.2d 41, 43 (11th Cir. 1989) (where a defendant who elects to represent himself and therefore cannot thereafter complain that the quality of his own defense amounted to a denial of effective assistance of counsel, any claim of ineffective assistance of counsel "can only concern

his attorney's pretrial preparation of the case which might have prejudiced Roggio's right to a fair trial"); Davis v. McDonough, No. 8:03CV1807T27TBM, 2006 WL 2801986, at *6–7 (M.D. Fla. Sept. 27, 2006) (reviewing petitioner's claims of ineffective assistance of counsel prior to counsel's discharge in the context of deficient pretrial preparation).

The relevant state court decision for habeas review is the highest state court decision reaching the merits of the claim. *Wilson v. Warden, Ga. Diagnostic Prison*, 834 F.3d 1227, 1235 (11th Cir. 2016), *cert. granted*, 137 S. Ct. 1203 (Feb. 27, 2017) (No. 16-6855). Where a state appellate court summarily affirms a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to that conclusion. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (citing *Richter*, 562 U.S. at 101–02; *Wilson*, 834 F.3d at 1235 ("It does not matter whether that adjudication provided a reasoned opinion because section 2254(d) 'refers only to a "decision"' and does not 'require a statement of reasons.'"). Thus, a federal court must determine what arguments or theories could have supported the state court's decision and then ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the relevant Supreme Court decision. *Richter*, 562 U.S. at 102; *see Lafler v.*

*Cooper*, 566 U.S. 156, 173 (2012) (where it was unclear whether the state court applied *Strickland* to an ineffective assistance of counsel claim before denying claim on the merits, federal courts could consider claim on the merits without deference to the state court's findings); *Bellizia v. Fla. Dep't of Corrections*, 614 F.3d 1326, 1328 n.1 (11th Cir. 2010) ("While federal courts typically must give deference to state court adjudications of claims in a habeas petition, *see* 28 U.S.C. § 2254(d)(1), such deference is not required if the state court failed to . . . address the merits of a claim asserted by the petitioner."); *Collier v. McNeil*, No. 5:06cv172/MCR/MD, 2008 WL 4346784, at *15 (N.D. Fla. Sept. 18, 2008) (reviewing petitioner's claim alleging ineffective assistance of counsel prior to discharge without any deference because the state court failed to address the claim pertaining to pre-discharge of counsel).

This Court, therefore, must determine what arguments or theories could have supported the state courts' ultimate decisions—not the court's reasoning—and ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with *Strickland*.

### Ground One: Ineffective assistance of trial counsel for failing to depose a state witness

Petitioner contends Mr. Henderson was deficient for failing to depose

a state witness who testified at trial, Officer O'Rouke. Petitioner says

Officer O'Rouke testified that it was Officer Adams, not Officer O'Rouke,

who conducted the security checks during the relevant time frame.

Mr. Henderson had received a list of potential witnesses from the

state prior to trial, but the list did not include Officer Adams. Petitioner says

that had Mr. Henderson deposed Officer O'Rouke Petitioner would have

learned about Officer Adams prior to trial. Petitioner goes on to argue that

Officer Adams would have testified that the victim did not make any

complaints regarding Petitioner during security checks on the night of the

incident. Thus, Petitioner speculates that Officer Adams would have

refuted the victim's testimony that Petitioner attacked the victim while the

victim was sleeping sometime between 3:15 a.m. and 4:15 a.m., and that

the officers ignored the victim's pleas for help after he was attacked.

Petitioner says Officer Adams' testimony therefore would have bolstered

the defense theory that it was the victim who initiated the attack later that

morning during milk rounds.

For the following reasons, the Court concludes that Petitioner has

failed to demonstrate that Mr. Henderson's failure to depose Officer

O'Rouke constitutes ineffective assistance of counsel. Whether Officer

O'Rouke's deposition testimony would have provided information regarding

Officer Adams is highly speculative. Moreover, the decision about whether to interview, depose, or cross-examine certain witnesses or potential witnesses are tactical choices and are within the standard of competency expected. *Magill v. State*, 457 So. 2d 1367, 1369 (Fla. 1984). "Counsel will not be deemed to be constitutionally deficient because of tactical decisions." *United States v. Costa*, 691 F.2d 1358, 1364 (11th Cir. 1982); *Small v. Fla. Dep't of Corrections*, 470 F. App'x 808, 812 (11th Cir. 2012). Whether or not Officer O'Rouke's deposition testimony would have been favorable or provided information regarding possible other witnesses, including Officer Adams, was a tactical decision. A tactical decision not to depose a non-material witness does not rise to the level of deficient performance.

Even assuming, however, that it was deficient performance for Mr. Henderson not to have deposed Officer O'Rouke, Petitioner's *Strickland* claim fails because Petitioner has failed to demonstrate that he was prejudiced.  Officer O'Rouke testified that if another officer does a check and an inmate gets into a fight, the officer would report it, and therefore, if Petitioner and the victim were fighting sometime between 3:15 a.m. and 4:15 a.m., an officer should have reported the fight. (ECF No. 16-1 at 339.) Although Officer Adams' alleged testimony may have substantiated this,

the jury nonetheless had this evidence to consider.

Additionally, there was overwhelming evidence from which the jury could conclude Petitioner was guilty of the offenses. Aside from the victim's own testimony, Officer Rhodes testified that when the officers responded to the cell, they found Petitioner sitting on his bunk with a slight smile on his face holding a bundle wrapped around a toothbrush with a razorblade melted into the end of the toothbrush. (ECF No. 16-1 at 247–50.) The only blood in the cell was a blood splatter on the sheets on the upper bunk, which was the victim's bunk. (*Id.* at 196, 252–54.)  A reasonable jury could find Petitioner guilty based on the evidence presented at trial.

Moreover, Petitioner has failed to provide any evidence that arguably would substantiate the testimony that Petitioner says Officer Adams would have provided at trial. Petitioner has not presented an affidavit from Officer Adams.  Petitioner's bare assertions without more are an insufficient basis for federal habeas relief. *See Small*, 470, F. App'x at 812; *Walker v. Sec'y, Fla. Dep't of Corrections*, 495 F. App'x 13, 17 (11th Cir. 2012) (the burden to show prejudice from counsel's failure to call a witness is heavy because "often, allegations of what a witness would have testified to are largely speculative").

In sum, Petitioner has failed to demonstrate either deficient

performance or prejudice. This claim is therefore due to be denied.

### Ground Two: Ineffective assistance of trial counsel for failing to timely provide the prosecution with a notice of intent to admit evidence of the victim's prior bad acts

In ground two, Petitioner claims Mr. Henderson was ineffective for failing to investigate the victim's prior bad acts and failing to give timely notice to the prosecution that the defense intended to introduce those prior bad acts at trial. Petitioner says he told Mr. Henderson that the victim was a member of the "Blood" gang, had a reputation for manufacturing weapons and extorting, bullying, and intimidating other prisoners. Petitioner says the victim was also known as a hit man and had previously committed several acts of violence against other prisoners. When Petitioner tried to admit this evidence at trial, however, he was precluded from doing so because Mr. Henderson had failed to provide proper notice pursuant to the *Williams* rule.[4] Petitioner claims this evidence would have demonstrated to the jury the victim's propensity for violence and manufacturing weapons, thereby supporting Petitioner's defense that it was the victim who attacked

---

[4] "The '*Williams* rule' takes its name from *Williams v. State*, 110 So. 2d 654 (Fla. 1959), and is codified at section 90.404(2), Florida Statutes (2005). This rule allows introduction of similar fact evidence of other crimes or acts by the defendant that are relevant to prove a material matter in the prosecution. 'Reverse *Williams* rule' evidence is evidence of a crime committed by another person that a defendant offers to show his or her innocence of the instant crime. *See Rivera v. State*, 561 So. 2d 799, 806 (Fla. 1990)." *McDuffie v. State*, 970 So. 2d 312, 323 n.2 (Fla. 2007).

Petitioner.

Even assuming Mr. Henderson should have provided notice of intent to introduce reverse *Williams* rule evidence,[5] Petitioner has failed to demonstrate that he was prejudiced by this failure. Petitioner's assertion that this evidence would have been admissible had Mr. Henderson timely provided notice to the State, is nothing more than speculative.

"Under Florida law, similar fact evidence of other crimes, referred to as *Williams* Rule evidence, 'is admissible when relevant to prove a material fact in issue' such as motive, intent, preparation or plan." *Lamontagne v. Sec'y, Dep't of Corrections*, 433 F. App'x 746, 749 (11th Cir. 2011) (citing Fla. Stat. § 90.404(2)(a)). "While most cases generally involve the offer of similar fact evidence by the prosecution against a defendant in a criminal

---

[5] Florida law provides, "[w]hen the *state* in a criminal action intends to offer evidence of other criminal offenses under paragraph (a), no fewer than 10 days before trial, the state shall furnish to the accused a written statement of the acts or offenses it intends to offer, describing them with the particularity required of an indictment or information. No notice is required for evidence of offenses used for impeachment or on rebuttal." Fla. Stat. § 90.404(2)(b) (emphasis added). The statute does not expressly provide that a defendant must provide the same notice to the state when the defendant intends to offer this type of evidence. Nonetheless, this pretrial notice requirement allows the trial court to make an initial determination prior to trial whether the evidence is admissible, a task that is highly individualized and factually intensive. *Robertson v. State*, 829 So. 2d 901, 907–08 (Fla. 2002). This suggests that the pretrial notice requirement would apply equally to a defendant who intends to provide this evidence at trial. *See State v. Storer*, 920 So. 2d 754, 756 (Fla. Dist. Ct. App. 2006) (discussing how the defendant filed a notice of intent to introduce reverse Williams rule evidence at trial "that is comparable to the notice the State is required to file under section 90.404(2)(c)(1), Florida Statutes (2003)").

case, there is nothing in the language of the statute which precludes the use of evidence offered by a defendant in a criminal case . . . ." *Brown v. State*, 513 So. 2d 213, 215 (Fla. Dist. Ct. App. 1987). Nonetheless, the evidence must meet the test of relevance to be admissible. *State v. Savino*, 567 So. 2d 892, 893 (Fla. 1990). Notably, similar fact evidence of other crimes, wrongs or acts is "inadmissible when the evidence is relevant solely to prove bad character or propensity." § 90.404(2)(a).

> Before admitting *Williams* rule evidence, it is incumbent upon the trial court to make multiple determinations, including whether the [person] committed the prior crime, whether the prior crime meets the similarity requires necessary to be relevant as set forth in our prior case law, whether the prior crime is too remote so as to diminish its relevance, and finally, whether the prejudicial effect of the prior crime substantially outweighs its probative value. As the above-mentioned requirements suggest, the determination of whether evidence properly may be admitted as *Williams* rule evidence is a highly individualized, factually intensive inquiry.

*Robertson v. State*, 829 So. 2d 901, 907–08 (Fla. 2002). Thus, whether this evidence would have even passed the relevancy test had Mr. Henderson filed a notice of intent is nothing more than speculation.

Petitioner tried to ask the victim if he was affiliated with any gangs, but the judge sustained the State's relevancy objection. (ECF No. 16-1 at 306–07.) Thus, evidence pertaining to the victim's alleged gang affiliation was excluded solely based on relevancy, and was not excluded based on a

failure to provide notice of intent to use reverse *Williams* rule evidence. This ruling confirms that even had Mr. Henderson provided timely notice of intent to introduce this evidence, it is highly likely the court would have deemed the evidence inadmissible.

Moreover, Defense witness Pedro Blanco, another inmate at Santa Rosa CI, testified that the victim told him he wanted to hurt Petitioner and send Petitioner home. (*Id.* at 312–13.) Mr. Blanco further testified that the victim argued with everyone, created problems, and threatened people. (*Id.* at 316–17.) Thus, although Petitioner was prohibited from delving further into the victim's prior bad acts, there was other evidence pertaining to the victim's threats for the jury to consider.

And, as previously discussed, there was ample other evidence upon which the jury could reasonably find Petitioner guilty. Petitioner has failed to demonstrate that Mr. Henderson's failure to timely file a notice of intent to introduce reverse *Williams* rule evidence constitutes ineffective assistance of counsel. The state court's decision was therefore not an unreasonable application of *Strickland*. Accordingly, ground two should be denied.

### Ground Three: Ineffective assistance of trial counsel for failing to investigate witnesses

In ground three Petitioner claims Mr. Henderson rendered ineffective assistance of counsel by failing to investigate four witnesses: (1) Antonio Ward, a fellow inmate; (2) Randy Nelson, a fellow inmate; (3) Clyde Johnson, a fellow inmate; and (4) Officer T. Shane. Petitioner claims Mr. Ward would have testified that the victim had confessed to Mr. Ward that he manufactured the weapon. Petitioner say Mr. Nelson would have testified that the victim was a gang member, used to extort money from Mr. Nelson, and was violent toward Mr. Nelson in the past. Mr. Johnson would have testified that he and the victim were in the same gang, the victim told Mr. Johnson that he was going to kill Petitioner, and that the victim showed Mr. Johnson the weapon with which he intended to kill Petitioner, which resembled the one used here. Finally, Petitioner says Officer Shane would have testified that he knew the victim was a violent gang member who manufactured weapons. Petitioner argues that if Mr. Henderson had investigated and deposed these witnesses, their testimony could have been used to impeach the victim and show that the victim had a reputation for violence.

As previously discussed, whether to interview or depose certain

witnesses are tactical choices and are within the standard of competency expected. *Magill*, 457 So. 2d at 1369. "Counsel will not be deemed to be constitutionally deficient because of tactical decisions." *Costa*, 691 F.2d at 1364. This is not a situation where Mr. Henderson failed to interview any witnesses. Instead, he specifically requested a continuance so he could interview certain potential defense witnesses. (ECF No. 16-1 at 74–80.) Mr. Henderson then subpoenaed four witnesses to testify at trial, as well as Officer O'Rouke. (*Id.* at 137.) Mr. Henderson also reviewed the list of potential witnesses Petitioner provided prior to trial, including Mr. Ward and Officer Shane, and told Petitioner that the information they would provide was not relevant. (*Id.* at 138.) Mr. Henderson did not render deficient performance for failing to investigate witnesses, who would not have provided relevant information. Moreover, there is no evidence in the record that Petitioner ever provided Mr. Nelson or Mr. Johnson's names to Mr. Henderson to investigate.[6]

Even if Mr. Henderson should have deposed these witnesses, however, Petitioner has not shown that he was prejudiced by the failure to do so. Petitioner has not provided anything to substantiate their testimony

---

[6] The other two names on the list of potential witnesses that Petitioner gave to Mr. Henderson were Marcino Rinco and Rinardo Sore. (*Id.* at 133.)

other than his own speculation. Moreover, even if these witnesses would have provided the testimony Petitioner says, their testimony would constitute reverse *Williams* rule evidence. And as discussed, whether that evidence would have even been admissible is highly speculative, particularly because the trial court had denied admission of similar evidence on relevancy grounds. Because Petitioner has failed to demonstrate either deficient performance or prejudice, his claim fails. Accordingly, ground three should be denied.

### Ground Four: Ineffective assistance of trial counsel for failing to investigate and introduce exculpatory forensic evidence

In ground four, Petitioner says Mr. Henderson rendered ineffective assistance of counsel by failing to further investigate the weapon employed in his case. Petitioner says forensic testing revealed neither Petitioner's fingerprints nor DNA on the weapon. Petitioner says Mr. Henderson, "failed to avail himself of the results of said evidence," which could have been used to impeach the victim at trial. (ECF No. 1 at 9.) Petitioner says further that Mr. Henderson should have tested the weapon to determine whether fingerprints or the DNA found on the weapon matched the victims' fingerprints or DNA.

To the extent Petitioner says the forensic evidence could have been

admitted at trial but for Mr. Henderson's errors, Petitioner has failed to demonstrate deficient performance. Mr. Henderson did not represent Petitioner at trial. Moreover, prior to his discharge as counsel Mr. Henderson subpoenaed the DNA expert for trial, Candy Lynn Zuleger. (ECF No. 16-1 at 278–79, 290.) Petitioner then called Ms. Zuleger at trial. (*Id.* at 290.) Thus, Mr. Henderson's representation regarding forensic testing was not deficient leading up to trial because Mr. Henderson subpoenaed the DNA expert for trial.

Furthermore, Ms. Zuleger testified that Petitioner did not match the DNA profile obtained from the toothbrush bristles of the weapon. (*Id.* at 292.) This evidence, therefore, was presented at trial for the jury to consider. Moreover, even assuming Mr. Henderson could have somehow compelled the victim to provide a DNA sample so that the sample could be tested against the DNA on the weapon, Petitioner cannot demonstrate that he was prejudiced by this failure. Petitioner's argument that further DNA testing would have revealed that the toothbrush was in fact the DNA of victim is wholly speculative. And even if further DNA testing had been performed and revealed the victim's DNA on the bristles, that would evidence nothing other than that the victim may have used the toothbrush at some point in the past, not that he manufactured the weapon or that he

stabbed Petitioner with the weapon. Accordingly, for these reasons, Petitioner has failed to demonstrate that the state court's decision was unreasonable in light of *Strickland*. Ground four is therefore due to be denied.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district

judge in the objections permitted to this report and recommendation.

## Conclusion

For the foregoing reasons it is respectfully **RECOMMENDED** that the

Petition for a writ of habeas corpus, ECF No. 1, should be **DENIED**, and a

certificate of appealability should be **DENIED**.

**IN CHAMBERS** this 12th day of May, 2017.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.